UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-80244-CIV-MIDDLEBROOKS/JOHNSON

UNITED STATES OF AMERICA

    Plaintiff,

v.

CLAUDE R. KIRK, JR. and
ERIKA KIRK,

    Defendants.
_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM OF LAW**

    Defendants Claude Kirk and Erika Kirk, by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 7.1 and 7.2, move for summary judgment against Plaintiff, the United States on Count II of the Complaint. The undisputed facts of this case demonstrate that Erika Kirk is not holding title to property located at 1180 Gator Trail, West Palm Beach, Florida 33409 as nominee on behalf of her husband, Claude Kirk. Accordingly, her home cannot be seized for payment of her husband's debts. The law is clear on this matter.

    Because there is no genuine issue as to any material fact, the Defendants are entitled to judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 56. This motion is supported by the following memorandum of law, relevant documents, the deposition testimony of the Defendants, and pursuant to Local Rule 7.5, a statement of material undisputed facts.

CASE NO.: 07-80244-CIV-MIDDLEBROOKS/JOHNSON

**STATEMENT OF MATERIAL UNDISPUTED FACTS**

Claude Kirk, a taxpayer and former Governor of the State of Florida, resides in Palm Beach County. (Compl. ¶ 5.)[1]  A delegate of the Secretary of Treasury has assessed federal income tax liabilities against Mr. Kirk (Compl. ¶ 7.)  Mr. Kirk has admitted his liability. (C. Kirk's Answer, ¶ 7.)[2]

On August 1, 1996, Erika Kirk (Claude Kirk's wife) and George and Ingrid Teichner (collectively the "Teichners") entered into a lease agreement for property located at 1180 Gator Trail, West Palm Beach, FL 33409 (hereinafter "subject property"). (Residential Lease Agreement.)[3]  Pursuant to the terms of the Residential Lease Agreement, the Teichners leased the subject property to Erika Kirk for the duration of her life. (Residential Lease Agreement, ¶ 1.)  In turn, Erika Kirk was to pay, as rent, the amount of the Teichner's mortgage payments directly to the mortgage company. (Residential Lease Agreement, ¶ 1.)  The Teichners also agreed to convey fee simple title to the subject property to Erika Kirk upon her payoff of any then-existing mortgages encumbering the subject property. (Residential Lease Agreement, ¶ 5.)

On March 15, 2005, Claude and Erika Kirk executed a mortgage note in the amount of $250,000 for the purchase of the subject property. (Mortgage Note.)[4]  The purchase price of the subject property was $195,954.33 and Erika's cost related to the

---

[1]  Citations to Compl. shall refer to the United States' Complaint, attached at Exhibit 1.

[2]  Citations to "Kirk's Answer" shall refer to Mr. Kirk's Answer to Plaintiff's Complaint, attached as Exhibit 2.

[3]  Citation to "Residential Lease Agreement" refers to the "Long Term Lease, Agreement to Transfer Real Property and Establish a Life Estate Lease Agreement" bates stamped KRK 0188-0191, a copy of which was produced to Plaintiff during discovery and is attached as Exhibit 3.

[4]  Citation to "Mortgage Note" refers to the Mortgage Deed, Note and Collateral Assignment of Rents, executed by Claude and Erika Kirk in favor of Joel Lavender, Trustee, dated March 15, 2005.  A copy of this document was marked as Exhibit 3 to Claude Kirk's deposition and is attached as Exhibit 4.

purchase was $30,066.50. (Settlement Statement.)[5] On that same date, the Teichners conveyed their fee simple interest in the subject property to Erika Kirk in accordance with the terms of the Residential Lease Agreement and pursuant to the terms of a separately executed Settlement Agreement. (Residential Lease Agreement, ¶ 5; Settlement Agreement, ¶ 2;[6] Special Warranty Deed.[7])

The United States filed its Complaint on March 16, 2007.

## MEMORANDUM OF LAW

### I.   STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ("Summary judgment . . . is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'").

---

[5] Citation to "Settlement Statement" refers to the Settlement Statement bates-stamped KRK 0031-0032, executed by the Teichners (sellers) and Erika Kirk (buyer) on March 15, 2005 in relation to the sale of the subject property, produced to Plaintiff during discovery and attached as Exhibit 5.

[6] Citation to "Settlement Agreement" refers to a settlement agreement entered into by Erika Kirk and George and Ingrid Teichner in connection with a lawsuit styled: Erika Kirk, Plaintiff/Counterdefendant vs. George and Ingrid Teichner, Defendants/Counterplaintiffs, filed in the Fifteenth Judicial Circuit In and For Palm Beach County, Florida, Case No.: 502004-CA-005540, bates-stamped KRK 0256-0257, produced to Plaintiff during discovery and attached as Exhibit 6.

[7] Citation to "Special Warranty Deed" refers to the Special Warranty Deed executed by George and Ingrid Teichner in favor of Erika Kirk, dated March 15, 2005. A copy of this document was marked as Exhibit 2 to Claude Kirk's deposition and is attached as Exhibit 7.

In cases where the moving party does not bear the burden of persuasion, it "is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim,' in order to discharge this 'initial responsibility.' Instead, the moving party simply may 'show – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (citations omitted), *quoting Celotex*, 477 U.S. at 323, 331.

The Plaintiff's inability to establish that Erika Kirk is holding title to the subject property as a nominee on behalf of Claude Kirk is fatal to Plaintiff's case. *See*, *e.g.*, *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997) ("[T]he basic issue . . . on a motion for summary judgment is 'whether the evidence . . . is so one-sided that one party must prevail as a matter of law'"), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## II.   ERIKA KIRK IS NOT A NOMINEE TITLEHOLDER

### A.   The Federal Tax Lien

In Count II of the Complaint, the United States alleges that Erika Kirk's home (the "subject property") was purchased with funds belonging to Claude Kirk and that Erika Kirk holds the subject property as a nominee on behalf of her husband. (Compl. ¶¶ 11-15). There is simply no evidence to support these allegations.

Section 6321 of the Internal Revenue Code provides, in relevant part:

> [i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States

> upon all property and rights to property, whether real or personal, belonging to such person.

I.R.C. § 6321. The Supreme Court has broadly interpreted section 6321 to include not only the property and rights to property owned by a delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977) (concluding that corporation was alter ego of taxpayer, thus levies could be assessed against the subject assets); *Shades Ridge Holding Co. v. United States,* 888 F.2d 725, 728 (11th Cir. 1989) ("Property of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability.").

### B.     Erika Kirk Is Not A Nominee Under Federal Law

As is generally true of property rights in tax enforcement cases, a district court must first look to state law to determine what rights the taxpayer has in property. *Simpson v. United States*, No. 87-526-CIV-J-12, 87-837-CIV-J-12, 1989 WL 73212, *3 (M.D. Fla. April 6, 1989) (noting that the determination of the nature of the taxpayer's interest in property is determined under state law). The analysis then shifts to whether the state defined rights constitute property or rights to property to which the federal tax lien can attach. *Drye v. United States*, 528 U.S. 49, 58 (1999). In the absence of state law regarding the property rights of a nominee, a court may rely upon federal law. *See Shades Ridge Holding*, 888 F.2d at 728-29. A review of Florida law reveals that Florida provides no guidance as to the proper standards for determining *nominee* ownership. Accordingly, the few federal cases in Florida that have addressed the nominee issue have

looked to federal law for guidance.[8] *See Simpson*,1989 WL 73212, at *3 (concluding that former wife was nominee where taxpayer contributed all assets for purchase of subject property).

In cases which the United States asserts a nominee lien against property, courts rely upon several common factors in determining whether a person is a mere nominee. There is no agreed upon definitive list of factors to be considered. Rather, the courts have considered many factors, including the following, to give consideration to all facts and circumstances surrounding the transfer: (1) whether the taxpayer expended personal funds for the property; (2) whether the taxpayer enjoys the benefits of the property; (3) the close family relationship between the taxpayer and the titleholder; (4) whether the taxpayer exercises dominion and control over the property; and (5) whether the record titleholder interferes with the taxpayer's use of the property. *See Simpson*, 1989 WL 73212, at *3. The burden of proving the connection between the taxpayer and the property at issue is on the government. *Morris v. U.S. Dep't of Treasury*, 813 F.2d 343, 345 (11th Cir. 1987).

The factors, applied here, point persuasively to the conclusion that Erika Kirk does not own the subject property as a nominee of her husband. All of the relevant factors point to this conclusion. To begin with the first factor, the source of the funds used to purchase the subject property in this case cannot be questioned. The property was

---

[8] As discussed in section C below, Florida does provide guidance on a theory similar to nominee ownership, though it discusses the theory using the term "resulting trust"--that is, Florida law seeks to determine whether a titled owner holds the property in a constructive or fictitious trust for the true beneficial owner.

purchased entirely with the funds obtained from the mortgage note that was signed by both Claude and Erika Kirk. (Mortgage Note.)

When asked why Claude Kirk had signed the mortgage note, he testified:

> Q. Did you enter into this mortgage with Joel Lavender?
>
> *   *   *
>
> A. Erika did, not me. I guaranteed it.
>
> Q. Why did you do that?
>
> A. So I would be obligated if they had to sue or if she dropped dead or something. I don't know. It had no value.

(C. Kirk Dep. Tr. 24:1-12.)[9]

One federal Florida case, applying the five factors concluded that a taxpayer's former wife was, in fact, holding title as a nominee because the taxpayer used his assets to purchase the subject property. *Simpson,* 1989 WL 73212, at *6. In that case, however, the taxpayer clearly used his assets to purchase the property. In fact, the taxpayer used his funds accumulated prior to the marriage to pay $95,000 of the $125,000 purchase price. *Id*. at *2. Indeed, the funds were proceeds from the sale of two properties that the taxpayer had purchased prior to his marriage. *Id*. The wife contributed no assets to the purchase and incurred no liability.

Here, there is simply no evidence that Claude Kirk purchased the subject property with his assets. Moreover, by signing the note, Erika assumed personal liability for the entire amount of the loan.

---

[9] Citation to "C. Kirk Dep. Tr." refers to the deposition transcript of Claude Kirk dated August 28, 2007. Relevant portions of the transcript are attached as Exhibit 8.

In *Morris v. U.S. Dep't of Treasury*, 813 F.2d 343, 345 (11th Cir. 1987), another nominee case, the Eleventh Circuit Court of Appeals stated that the government must prove by "substantial evidence" a nexus between the taxpayer/debtor, and the third party against whom the government is levying in satisfaction of the taxpayer's debt. In that case, the court found such a nexus through witness testimony where the 'nominee' admitted that she could not have accumulated the amount of money necessary and no reasonable explanation for the source of the funds was provided. *Id*. at 347. The court concluded that the taxpayer had directly deposited the funds into the nominee's account. *Id*. at 348.

Unlike the taxpayer in *Morris*, there is simply no evidence that Claude Kirk used his assets to purchase the subject property. In addition, the Defendants' deposition testimony shows that although Claude Kirk signs the checks used to make payment on the mortgage, those funds derive from a joint bank account that is often funded by Erika Kirk's personal savings. (C. Kirk Dep. Tr. 26:1-7; E. Kirk Dep. Tr. 11:16-12:17[10]). *See also Spark v. Canny*, 88 So.2d 307 (Fla. 1956) (noting that when a joint bank account is established with the funds of one person, a gift of the funds is presumed).

Accordingly, insofar as financial investment in a piece of property reflects beneficial interests therein, it appears that Claude and Erika Kirk shared equally in assuming liability for the funds borrowed and used to acquire the home.

With regard to the second and third factors of the analysis, it is not disputed that the Kirks are married and live together on the subject property. Naturally, both enjoy the

---

[10] Citation to "E. Kirk Dep. Tr." refers to the deposition transcript of Erika Kirk dated August 28, 2007. Relevant portions of the transcript are attached as Exhibit 9.

benefits of living on the property, even though it has always been titled in Erika's name only.

The fourth and fifth factors point to the same conclusion. Since purchasing the home in 2005, as the titleholder, Erika has exercised dominion over the property and has behaved as the owner.[11] She has testified that she regularly contributes to paying for the expenses related to the upkeep of the home (E. Kirk Dep. Tr. 12:9-17) and also shares in the decision-making regarding the maintenance of the home.

> Q. So, when there's a problem, like you mentioned that you needed a new roof - -
> A. Yes.
> Q. - - does your husband handle those things?
> A. No. What do you mean, he handle those things?
> Q. Arrange to get that repaired, for example?
> A. Well, we did that together. We find somebody who does it, and did the roof. Yes.

(E. Kirk Dep. Tr. 13:9-18.)

> Q. Have you ever had a dispute where he wanted to do one thing with the house and you wanted to do --
> A. No, never.

(E. Kirk Dep. Tr. 13:22-25.)

Interestingly, the Sixth Circuit has noted that these factors are "less probative in the context of a home purchased by a married couple because even if the home is only titled in one name, both ordinarily act as true owners." *Spotts v. United States*, 429 F.3d 248, 253 (6th Cir. 2005). In that case, the Sixth Circuit Court of Appeals vacated a

---

[11] According to the Florida Supreme Court, "the person whose name appears on legal title is presumed to be the owner of the property in question." *Cannova v. Carran*, 92 So. 2d 614, 619 (Fla. 1957).

district court's award of summary judgment in favor of the United States regarding nominee liability. The Court found that an issue of fact existed as to whether a husband intended, by titling property in his wife's name only, to make a gift, which would preclude the ex-wife's status as a nominee. In holding that the factors discussed above did not apply under Kentucky law, the Court noted:

> [T]he factors used by courts to determine nominee status are most enlightening when the alleged nominee and the alleged true beneficial owner have the type of relationship where both individuals would not normally be expected to simultaneously act as true owners. *The factors are less probative in the context of a home purchase by a married couple because even if the home is only titled in one name, both ordinarily act as true owners.* Stated another way, *several factors used by courts will provide the same answer for every marital relationship in this context, thus providing little utility in distinguishing tax shams from legitimate titling decisions between spouses*.

*Id*. at 253 (emphasis added).

The same can be said about the Kirks here.

In sum, the application of the relevant factors to the facts of this case leads inescapably to the conclusion that the March 2005 purchase of the subject property cannot be characterized as Claude Kirk's purchase. Under the circumstances, for purposes of federal tax law, Erika Kirk is not a nominee owner of the subject property, and the property is therefore not subject to a lien.

### C. Erika Kirk Is Not A Nominee/Trustee Under Florida Law

In Florida, a resulting trust arises when one person pays for property, or assumes payment of all or part of the purchase money, but has title conveyed to another. *Frank v. Eeles*, 13 So. 2d 216 (Fla. 1943). Although the United States has not argued for the existence of a resulting trust, it is worth noting that one would not arise in the

circumstances of this case despite the fact that Claude Kirk assumed personal liability for the mortgage. In Florida, the mere execution of a mortgage is not evidence of ownership of the mortgaged property. *See Pasekoff v. Kaufman*, 392 So. 2d 971 (Fla. 3d DCA 1981).

In *Johnson v. Craig*, 28 So. 2d 696, 698 (Fla. 1947), the Florida Supreme Court, quoting from the Restatement (First) of Trusts § 454 (1935) stated that:

> [w]here a transfer of the property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, *unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise*.

*Craig*, 28 So. 2d at 698.

The application of this principle to this case compels the conclusion that no trust was created when the Teichner's conveyed title to Erika Kirk. This is so because Mr. Kirk's testimony clearly shows that he had no intention to establish a trust during this time. Moreover, the Defendants' testimony convincingly reflects that the purchase of the subject property took the form that it did because his wife had always wanted a house.

> Q: Okay. Explain to me again why the house was put in Erika's name.
>
> A: Why it was put in her name is because she always wanted a house, and the only way that she could have a home is with her creditability, and therefore, that's what we did. No other reason. There is no other way.

(C. Kirk Dep. 14:18-25).

> Q: And what's the arrangement that was worked out with Mr. Teichner?
>
> A: That he would take over the payments of the house and I would pay him, and then, whenever it was possible, it would be transferred into Erika's name and a proper mortgage created,

> because it was always to be her home. It was never, ever supposed
> to have any relationship with me.

(C. Kirk Dep. 13:5-12.)

Claude Kirk never intended to have any ownership interest in the subject property, notwithstanding the fact that he co-signed on the mortgage note and assumed personal liability for the loan.[12]   His testimony demonstrates that a resulting trust never arose in his favor, despite the fact that Florida law recognizes the viability of resulting trusts under these circumstances.  Florida property law clearly shows that Claude Kirk holds no interest—legal or equitable—in the subject property.

A similar argument was adopted by the Sixth Circuit in *Spotts*, 429 F.3d 248.  In that case, Ray and Peggy Spotts arranged for the purchase of their home in the following manner:  Ray Spotts wired $180,000 of his funds to an account at Barclay Bank in Grand Turks.  *Id*. at 250.  This $180,000, along with a $20,000 on loan from a company called Orion Holding, were forwarded to the settlement officer at the time of the purchase of their home.  *Id*.  According to the district court, to disguise the fact that the Spotts' were using their own money to purchase the home, and as protection against business creditors, they both executed a note to Orion Bank for $200,000.  This note was secured by a mortgage on the home.  *Id*.  Orion Bank then forwarded the $200,000 to the settlement officer in the guise of loan proceeds.  The home was purchased for $272,500, with the balance of the purchase price coming from the Peggy, the wife.  *Id*.  Notably, the note and mortgage were in the names of both the husband and wife; however, the

---

[12] *See* comment a to Restatement (First) of Trusts § 454: "If the person making the part payment manifested an intention to make a gift to the transferee, no resulting trust arises and the transferee holds the property free of trust, as he does where the whole of the purchase price is paid by way of gift to the transferee."

deed was placed solely in the wife's name. *Id*. Two years later, the wife filed for divorce. *Id*. Shortly thereafter, the IRS assessed tax liabilities against the husband and filed a nominee tax lien on the home. *Id*.

In his deposition, Ray Spotts testified that he had titled the home in his wife's name to make her feel more secure about their marriage, *id*. at 252, and to protect the home from business creditors--the husband was an aggressive businessman. *Id*.

In vacating the district court's grant of summary judgment, the Sixth Circuit noted that the district court failed to look to Kentucky law which provided guidance on nominee theory under a constructive trust theory. *Id*. at 253-54. The Court noted that under Kentucky law, a person does not acquire an interest in property solely because the property was purchased with funds belonging wholly or in part to such person. *Id*. at 252.

Like in *Spotts*, there is simply no evidence that Claude Kirk ever held (or intended to hold) any interest—legal or equitable—in the subject property.

## **CONCLUSION**

The Defendants are entitled to summary judgment, as a matter of law, on Count II of the Complaint because there is no evidence to support such a claim. The undisputed facts of this case demonstrate that Erika Kirk is not holding title to property located at 1180 Gator Trail, West Palm Beach, Florida 33409 as nominee on behalf of her husband, Claude Kirk.

CASE NO.: 07-80244-CIV-MIDDLEBROOKS/JOHNSON

Respectfully submitted,

LEWIS TEIN, P.L.
*Counsel for Claude R. Kirk, Jr.*
*& Erika Kirk*
3059 Grand Avenue, Suite 340
Coconut Grove, Florida 33133
Telephone:  (305) 442-1101
Facsimile:   (305) 442-6744

BY:  /s/ David B. Rosemberg
      GUY A. LEWIS
      Fla. Bar No.: 0623740
      lewis@lewistein.com
      MICHAEL R. TEIN
      Fla. Bar No.: 993522
      tein@lewistein.com
      DAVID B. ROSEMBERG
      Fla. Bar. No.: 582239
      rosemberg@lewistein.com
      SUSAN CAPOTE
      Fla. Bar. No.: 27563
      scapote@lewistein.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 4, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified either by transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 /s/ David B. Rosemberg
DAVID B. ROSEMBERG

CASE NO.: 07-80244-CIV-MIDDLEBROOKS/JOHNSON

## SERVICE LIST

Thomas F. Koelbl, Esq.
U.S. Department of Justice
P.O. Box 14198
Ben Franklin Station
Washington, DC 20044

Lewis Tein PL
ATTORNEYS AT LAW

3059 Grand Avenue, Suite 340, Coconut Grove, Florida 33133