IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No.  07-80244-CIV-MIDDLEBROOKS/JOHNSON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CLAUDE R. KIRK, JR. and ERIKA KIRK, | ) |
| | ) |
| Defendants. | ) |

## UNITED STATES' MOTION FOR SUMMARY JUDGMENT

The United States of America moves for summary judgment under Fed. R. Civ. P. 56(a) on the grounds that there are no material facts in dispute and that it is entitled to judgment as a matter of law.  Specifically, the undisputed facts demonstrate that defendant Claude R. Kirk, Jr. ("Kirk") incurred income tax liabilities for the years 1995, 1996, 1997, 1998, 2000, 2001, 2002, 2003, and 2005, and that he is indebted to the United States for those taxes.  The undisputed facts further demonstrate that defendant Erika Kirk is holding title to the Kirks' personal residence as the nominee of Kirk  In support of its motion, the United States relies upon the parties' pleadings, the declarations of Gary Greene and Thomas F. Koelbl, Government Exhibits 1 through 11, and the accompanying memorandum of law.

Accordingly, the United States respectfully requests that it is entitled to summary judgment: (1) reducing the assessments against defendant Claude R. Kirk, Jr. for unpaid income taxes for the years 1995, 1996, 1997, 1998, 2000, 2001, 2002, 2003, and 2005 to judgment and determining that Claude R. Kirk, Jr. is indebted to the United States in the amount of $320,374.20 as of September 1, 2007, plus fees, interest, and all statutory additions thereafter as

provided by law; and (2) declaring that defendant Erika Kirk is holding title to the property at issue in this proceeding as a nominee on behalf of Claude R. Kirk, Jr.

        R. ALEXANDER ACOSTA
        United States Attorney

        /s/ Thomas F. Koelbl
        THOMAS F. KOELBL
        Trial Attorney, Tax Division
        U.S. Department of Justice
        Post Office Box 14198
        Ben Franklin Station
        Washington, D.C.  20044
        Telephone: (202) 514-5891
        Facsimile: (202) 514-9868
        thomas.f.koelbl@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 07-80244-CIV-MIDDLEBROOKS/JOHNSON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CLAUDE R. KIRK, JR. and ERIKA KIRK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The United States brought this action to reduce to judgment unpaid federal income tax liabilities of defendant Claude R. Kirk, Jr. ("Kirk") and to obtain a judgment that defendant Erika Kirk is holding title to the Kirks' personal residence as a nominee on behalf of Kirk. The undisputed facts establish that the United States is entitled to summary judgment on both counts.

Kirk does not dispute his tax liability, and discovery in this case has shown that Erika Kirk is Kirk's nominee with respect to their personal residence. Kirk provides all the funds for the property; the mortgage, utility bills, and property taxes are paid from Kirk's income. Erika Kirk did not pay any consideration for the property. Indeed, Kirk handles all financial transactions related to the property, and Erika Kirk has no knowledge of why the property was titled in her name. There is a close relationship between the nominee and the taxpayer; they are husband and wife. Kirk maintains possession and control of the property. He has lived there continuously since the property was purchased. Kirk is listed on the mortgage documents for the property, and he has filed income tax returns separate from his wife on which he deducts the

-1-

mortgage interest paid on the property. Finally, Kirk admitted that the property was titled in his wife's name in an attempt to keep it from the reach of the IRS.

The undisputed facts establish that Kirk is liable to the United States for unpaid federal income taxes, as described below. Accordingly, summary judgment should be granted in favor of the United States on this ground. Moreover, because the undisputed facts establish that Erika Kirk is holding their personal residence as the nominee of Kirk, summary judgment in favor of the United States on this ground is appropriate.

## UNDISPUTED MATERIAL FACTS

The Kirks moved into their personal residence, located at 1180 Gator Trail, West Palm Beach, Florida in the late 1990s. (Gov. Ex. 3, Dep. of Claude Kirk, p 10; Gov. Ex. 4, Dep. of Erika Kirk, p. 7.) Before that time, the Kirks rented a home. (Gov. Ex. 3 p. 10.) At the time the Kirks moved into the Gator Trail home, it was purchased by George Teichner. (Gov. Ex. 3 p. 12.) A mortgage was taken out in Teichner's name, and Kirk then made the monthly mortgage payments. (Gov. Ex. 3 pp. 12, 17-18; Gov. Ex. 5, Dep. of Claude Kirk Ex. 1.) Kirk didn't pay Teichner but, rather, made payments on his behalf directly to the lender. (Gov. Ex. 3 p. 16; Gov. Ex. 5.) Additionally, Kirk arranged for a purchase option in Erika Kirk's name that could be executed at any time in the future from Teichner. (Gov. Ex. 3 p. 12-13.) At the time the Kirks moved into their residence, Kirk had already accrued significant tax liabilities. (Decl. of Gary Greene; Gov. Ex. 1.) Beginning in 1995 and for years thereafter, Kirk failed to pay all of his self-reported income tax liabilities. (Id.)

In 2005, Kirk arranged a mortgage in his and Erika Kirk's names and purchased the house outright pursuant to the purchase option arranged with George Teichner. (Gov. Ex. 3 pp. 14-17, 24; Gov. Ex. 4 p. 10; Gov. Ex. 6, 7, Dep. of Claude Kirk Ex. 2, 3.) Kirk did not title the

residence in his name, however.  (Id.)  Instead, he titled the property in Erika Kirk's name only.  (Id.)  Though the property was titled in her name, Erika Kirk did not pay any consideration for it.  She has not been employed since the Kirks moved into the property, and her only source of income–her social security checks–have been placed into a savings account by her and only used in emergencies.  (Gov. Ex. 4 pp. 5-6, 10-12.)  Instead, Kirk made all of the payments on this second mortgage as he did on the first mortgage.  (Gov. Ex. 3 p. 27; Gov. Ex. 8, Dep. of Claude Kirk Ex. 4.)  Indeed, for each year since the Kirks moved into their residence, Kirk has paid the mortgage and paid all bills related to the property (Gov. Ex. 3 pp. 16, 47-48.)

## ARGUMENT

**I.     Standard for Summary Judgment**

Summary judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial.  Fed. R. Civ. Pro. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., 932 F.2d 1384, 1387-88 (11th Cir.), cert denied, 502 U.S. 925 (1991); Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).  Rule 56(c) dictates that the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).  Only disputes over facts relevant to the ultimate outcome of a case are material.  "Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.  See also United States v. Gilbert, 920 F.2d 878, 883 (11th Cir. 1991).

The nonmoving party may not rest on mere allegations.  Moses v. American Nonwovens, Inc., 97 F.3d 446, 447 (11th Cir. 1996), cert. denied, 519 U.S. 1118 (1997); Walker v. Darby,

911 F.2d 1573, 1576-77 (11th Cir. 1990).  Moreover, the courts will not entertain immaterial or insubstantial doubts as to material facts to defeat a summary judgment motion.  Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986).  Rather, an opposing party must come forward with evidence that is "significantly probative," in the sense that it creates an issue which may not be resolved until the trier of fact has the opportunity to assess the credibility of the witnesses.  Liberty Lobby, 477 U.S. at 250.

## II.     Unpaid Federal Taxes

An assessment of federal tax by the Internal Revenue Service is presumed valid.  See, e.g., Welch v. Helvering, 290 U.S. 111,115 (1933); United States v. Chila, 871 F. 2d 1015, 1018 (11th Cir. 1985); Gentry v. United States, 962 F.2d 555, 557-58 (6th Cir. 1992); Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1992), cert. denied, 506 U.S. 891 (1002); Rocovich v. United States, 933 F .2d 991, 994 (Fed. Cir. 1991); United States v. Zolla, 724 F .2d 808, 810 (9th Cir.), cert. denied, 469 U.S. 830, and reh'g denied, 469 U.S. 1067 (1984);  United States v. Dixon, 672 F. Supp. 503, 506-07 (M.D. Ala. 1987), aff'd, 849 F. 2d 1478 (11th Cir. 1988).  A taxpayer has the burden of overcoming the presumption of correctness by proving that the method of computing the tax, and therefore the assessment, is arbitrary and without foundation.  Olster v. Commissioner, 751 F.2d 1174 (11th Cir. 1985) (citing Mersel v. United States, 420 F.2d 517, 520 (5th Cir. 1969)); Dixon, 672 F. Supp. at 506.

A delegate of the Secretary of the Treasury assessed federal income tax liabilities against Kirk for the tax years and on the dates listed below, and as of February 22, 2007, there remained the listed unpaid balances of those assessments:

| Tax Year | Assessment Date | Unpaid Assessed Balance |
|:---:|:---:|:---:|
| 1995 | 10/07/96 | $13,836.99 |
| 1996 | 09/01/97 | $26,494.93 |
| 1997 | 04/27/98 | $7,560.98 |
| 1998 | 04/05/99 | $14,551.35 |
| 2000 | 10/01/01 | $17,947.06 |
| 2001 | 10/21/02 | $71,814.07 |
| 2002 | 11/17/03 | $4,442.52 |
| 2003 | 04/04/05 | $3,151.46 |
| 2005 | 04/10/06 | $30,091.16 |

(Compl., ¶ 7; Greene Decl. ¶ 2; Gov. Ex. 1 pp. 2, 9, 15, 22, 27, 32, 37, 41, and 45.) The tax assessments were based on income tax returns filed by Kirk himself. (Gov. Ex. 1.) Kirk does not dispute his liability for the assessed taxes. (Gov. Ex. 2 p. 3.) Further, the United States has submitted the declaration of Gary Greene with respect to these unpaid federal tax liabilities, as well as certified IRS transcripts of account. (Greene Decl.; Gov. Ex. 1.)

Notices of the assessments and demands for their payment were properly made on Kirk (Greene Decl. ¶ 3.) Kirk's tax liability for these years remains outstanding. (Greene Decl. ¶ 4.) As of September 1, 2007, he is indebted to the United States in the amount of $320,374.20, plus fees, interest, and all statutory additions thereafter as provided by law. (Greene Decl. ¶ 4.)

### III. Erika Kirk is the nominee of Claude Kirk, and the United States' tax liens rightfully attach to the Kirks' personal residence

26 U.S.C. § 6321 provides that the United States' tax liens attach to the Kirks' personal residence, even though the property is nominally titled to Erika Kirk. Section 6321's reach is broad, and Erika Kirk is serving as the classic nominee on behalf of her husband.

26 U.S.C. § 6321 provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty * * * ) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." The federal tax lien attaches not only to property owned by the taxpayer at the time the lien arises, but also, to all property owned by the taxpayer at any time during the life of the lien. Glass City Bank v. United States, 326 U.S. 265, 267 (1945). The scope of section 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." United States v. National Bank of Commerce, 472 U.S. 713, 719-720 (1985). As the Supreme Court stated in Glass City Bank v. United States, 326 U.S. 265, 267 (1945), "[s]tronger language could hardly have been selected to reveal a purpose to assure the collection of taxes * * * ."

Consistent with the broad scope of section 6321, the federal tax lien attaches to the property of a taxpayer even if it is held by a nominee or alter ego. G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-351 (1977); Shades Ridge Holding Co., Inc. v. United States, 888 F.2d 725, 728 (11th Cir. 1989). Thus, federal tax liens against a taxpayer may attach to property, even though the taxpayer is not the nominal holder of title to the property--i.e., title being in a nominee, strawman, or alter ego--so long as the taxpayer is the true equitable owner of the property. In such instances, courts ignore the fact that the property is nominally titled in a third party's name and uphold the IRS's right to levy or foreclose upon such property. See, e.g., G.M. Leasing Corp. v. United States, 429 U.S. at 350-351; Shades Ridge Holding Co., Inc. v. United States, 888 F.2d 725 at 728-729; Lemaster v. United States, 891 F.2d 115, 119 & n.3 (6th Cir. 1989); Al Kim, Inc. v. United States, 650 F.2d 944, 946-947 (9th Cir. 1979); Valley Finance,

Inc. v. United States, 629 F.2d 162, 171-173 (D.C. Cir. 1980); Loving Savior Church v. United States, 728 F.2d 1085 (8th Cir. 1984).

The nominee determination turns on the facts and circumstances of each case. Simpson v. United States, 1989 WL 73212, *6 (M.D. Fla.). "As has been noted by virtually all courts, there is no exact science to the nominee/alter ego analysis and no single factor is necessarily decisive." United States v. Engels, 2001 U.S. Dist. LEXIS 17247, at *41-42 (N.D. Iowa 2001). The court in Simpson v. United States, articulates factors that courts typically consider when determining whether a third party holds property as the nominee of a taxpayer: "(1) whether the taxpayer expended personal funds for the property; (2) whether the taxpayer enjoys the benefits of the property; (3) the close family relationship between the taxpayer and the titleholder; (4) whether the taxpayer exercises dominion and control over the property; and (5) whether the record titleholder interferes with the taxpayer's use of the property." Simpson v. United States, 1989 WL 73212, *6 (M.D. Fla.); see also Cody v. United States, 348 F. Supp. 2d 682, 694-5 (E.D. Va. 2004) (listing similar factors).

The controlling issue in determining whether title is held by a nominee is, thus, whether a party has engaged in a legal fiction, by placing property in the hands of another, while retaining all or some of the benefits of ownership. The nominee theory may be established without a showing of fraud. See, e.g., United States v. Bollinger, 485 U.S. 340 (1988) (corporation held title to property as a nominee for partnerships so the partnerships could avoid Kentucky usury law).

In the present case, the IRS made assessments against Kirk as described above for unpaid income taxes. The federal tax liens arose on the dates of these assessments, and they attached to all property and rights to property belonging to Kirk on those dates and to any property

-7-

thereafter acquired. In this case, nearly all of the factors support a finding that Erika Kirk is the nominee of Kirk and Kirk has a property interest in his residence to which the federal tax liens have attached.

### 1. Kirk expended personal funds for the property

The Kirks originally moved into their residence in the late 1990s. (Gov. Ex. 3, Dep. of Claude Kirk, p 10; Gov. Ex. 4, Dep. of Erika Kirk, p. 7.) The home was purchased from a neighbor by George Teichner. (Gov. Ex. 3 p. 12.) A mortgage was taken out in Teichner's name, and Kirk then made the monthly mortgage payments. (Gov. Ex. 3 pp. 12, 17-18; Gov. Ex. 5, Dep. of Claude Kirk Ex. 1.) Kirk didn't pay Teichner directly but, rather, made payments on his behalf to the lender. (Gov. Ex. 3 p. 16; Gov. Ex. 5.) Additionally, Kirk arranged for a purchase option in Erika Kirk's name that could be executed at any time in the future from Teichner. (Gov. Ex. 3 p. 12-13.) In 2005, the Kirk arranged a mortgage in his and Erika Kirk's names, purchased the house outright pursuant to the purchase option, and titled it in Erika Kirk's name. (Gov. Ex. 3 pp. 14-17, 24; Gov. Ex. 4 p. 10; Gov. Ex. 6, 7, Dep. of Claude Kirk Ex. 2, 3.) Kirk made all of the payments on this second mortgage as well. (Gov. Ex. 3 p. 27; Gov. Ex. 8, Dep. of Claude Kirk Ex. 4.)

For each year since the Kirks acquired the property, Kirk has paid the mortgage. (Gov. Ex. 3 p. 16.) He has also deducted the mortgage interest on his taxes. (Gov. Ex. 3 p. 41-42, 44, 45-46, 47; Gov. Ex. 9, 10, 11, Dep. of Claude Kirk Ex. 7-9.) Likewise, Kirk has paid the utility bills and the property taxes on the property. (Gov. Ex. 3 p. 47-48.) Indeed, all the money that is used to pay expenses related to the property is primarily derived from Kirk's income. (Gov. Ex. 3 pp. 47-48.) Further, Erika Kirk did not pay any consideration for the property. She has not been employed since the Kirks moved into the property, and her only source of income–her

social security checks–have been placed into a savings account by her and only used in emergencies.  (Gov. Ex. 4 pp. 5-6, 10-12.)

### 2. Kirk placed the property in Erika Kirk's name at a time when he had tax debts

At the time the property was placed in Erika Kirk's name, Kirk owed significant income tax liabilities and knew that the IRS was attempting to collect these liabilities.  (Gov. Ex. 3 p. 13-14.)  Indeed, Kirk admitted that the house was placed in his wife's name to keep it from the reach of the IRS.  (Id.)  Although Kirk provided two other purported explanations for why the property is titled in Erika Kirk's name, neither of these has any basis.  He stated that Erika Kirk, as a German, placed a great emphasis on owning her own home, but provided no further explanation of this.  (Gov. Ex. 3 p. 21.)  This is undermined by the fact that Erika Kirk was unaware why the property was titled in her name.  (Gov. Ex. 4 p. 8.)  He also stated that the home was placed in his wife's name because his poor credit prevented him from purchasing a home.  (Gov. Ex. 3 p. 10.) Yet Kirk's name appears on all of the mortgage documents related to the property, and Kirk admitted that the mortgagors required him to sign the mortgage documents to guarantee the mortgage.  (Gov. Ex. 3 p. 24; Gov. Ex. 7.)

### 3. Kirks enjoys the benefits of the property and exercises dominion and control over the property

Kirk has unquestionably continued to enjoy the benefits of the property.  He has lived at the property continuously since the Kirks acquired it in the late 1990s.  (Gov. Ex. 3 p. 10; Gov. Ex. 4 p. 7.)  Further, many–if not all–of the incidences of ownership and control of the property have been exercised by Kirk since the property was first acquired.  For example, Kirk signs checks for and provides money for all bills related to the property.  (Gov. Ex. 3 pp. 47-48.)  He is also on the mortgage for the property.  (Gov. Ex. 7.)  Additionally, he has been actively involved

in all dealings related to the purchase, title, and mortgage of the property.  Indeed, Erika Kirk said that Kirk handled all finances related to the purchase of the home.  (Gov. Ex. 4 pp. 10-12.) She had no knowledge of the mortgage documents and didn't even recognize the document titling the property in her name.  (Gov. Ex. 4 p. 8.)  Thus, it is not a mere formality that Kirk is on the mortgage for the property.  Instead, he fully manages the affairs of the property.

### 4. There is a close family relationship between Kirk and Erika Kirk, and Erika Kirk does not interfere with Kirk's use of the property

There is a close family relationship between Kirk and Erika Kirk; they are husband and wife and have been for some forty years.  (Gov. Ex. 4 p. 4.)  Moreover, Erika Kirk does not interfere at all with Kirk's use of the property.  As described in more detail in section 3 above, Kirk exercises full control over the property and actively handles all matters with respect to the mortgage on the property.  (Gov. Ex. 4 pp. 10, 12-13.)

In sum, discovery in this case overwhelmingly has established that Erika Kirk is holding title to the property as Kirk's nominee.

## CONCLUSION

For the reasons discussed above, the United States respectfully requests that the Court grant summary judgment in its favor and against defendants Claude and Erika Kirk.  The United States respectfully requests that it is entitled to summary judgment: (1) reducing the assessments against defendant Claude R. Kirk, Jr. for unpaid income taxes for the years 1995, 1996, 1997, 1998, 2000, 2001, 2002, 2003, and 2005 to judgment and determining that Claude R. Kirk, Jr. is indebted to the United States in the amount of $320,374.20 as of September 1, 2007, plus fees, interest, and all statutory additions thereafter as provide by law; and (2) declaring that defendant

Erika Kirk is holding title to the property at issue in this proceeding as a nominee on behalf of Claude R. Kirk, Jr.

                                  Respectfully submitted,

                                  R. ALEXANDER ACOSTA
                                  United States Attorney

                                  /s/ Thomas F. Koelbl
                                  THOMAS F. KOELBL
                                  Trial Attorney, Tax Division
                                  U.S. Department of Justice
                                  P.O. Box 14198
                                  Ben Franklin Station
                                  Washington, D.C.  20044
                                  Telephone: (202) 514-5891
                                  Facsimile: (202) 514-9868
                                  thomas.f.koelbl@usdoj.gov

## CERTIFICATE OF SERVICE

  I certify that service of the foregoing United States' Motion for Summary Judgment has been made upon the following by depositing a copy in the United States mail, postage prepaid, this 4th day of September, 2007:

    Michael R. Tein
    Lewis Tein, P.L.
    3059 Grand Avenue, Suite 340
    Coconut Grove, FL 33133

        /s/ Thomas F. Koelbl
        THOMAS F. KOELBL
        Trial Attorney, Tax Division
        U.S. Department of Justice
        P.O. Box 14198
        Ben Franklin Station
        Washington, D.C.  20044
        Telephone: (202) 514-5891
        Facsimile: (202) 514-9868
        thomas.f.koelbl@usdoj.gov